UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| J & J Sports Productions, Inc., ) | C/A No.: 2:12-cv-2498-CWH-BHH |
|                Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Latashia Washington and Brian Washington ) | |
| d/b/a Honey Beez, ) | |
| ) | |
|                Defendants. ) | |
| _____) | |

**I.    INTRODUCTION**

Plaintiff brings this action pursuant to 47 U.S.C. § 553 for the unauthorized reception of cable service and 47 U.S.C. § 605 for the unauthorized publication or use of communications. Presently before the court is Plaintiff's Motion for Default Judgment (Document #39). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. §636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because Plaintiff's Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

**II.    PROCEDURAL HISTORY**

On August 30, 2012, J & J Sports Productions, Inc. ("Plaintiff") filed an action in this court against Latashia Washington d/b/a Honey Beez; and on January 15, 2013, Plaintiff filed an Amended Complaint against Latashia Washington and Brian Washington d/b/a Honey Beez ("Defendants"). On February 13, 2013, Plaintiff filed an Affidavit of Service (Entry #28) indicating Defendant, Brian Washington d/b/a Honey Beez, was personally served on January 17, 2013, and Defendant, Latashia Washington d/b/a Honey Beez, was personally served on February 7, 2013. Defendants failed to timely file an Answer or otherwise respond to Plaintiff's Complaint. Thus, upon Plaintiff's request,

the Clerk of Court made an Entry of Default on March 12, 2013, as to the Defendant, Brian Washington (Entry #31), and the Clerk made an Entry of Default as to the Defendant, Latashia Washington on April 1, 2013 (Entry #36). The present Motion for Default Judgment followed.

The Court conducted a hearing, on August 15, 2013. [Doc. 48.] Counsel for the plaintiff was present; the defendants did not appear. *Id*.

### III. FACTS

A review of Plaintiff's Amended Complaint, Request for Entry of Default, Motion for Default Judgment, and all supporting Affidavits and other information provided reveals the following facts, which are accepted as true in light of Defendants' default. See *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.1 (4th Cir. 2009) (accepting plaintiff's allegations against defaulting defendant as true, noting a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (quoting *Ryan v. Homecomings Fin. Network,* 253 F.3D 778, 780 (4th Cir. 2001)).

By contract, Plaintiff J & J Sports Productions, Inc., paid for and was thereafter granted the exclusive, nationwide commercial television distribution rights to *Manny Pacquiao v. Shane Mosley, WBO World Welterweight Championship Fight Program*, including all under-card bouts and fight commentary encompassed in the television broadcast of the event, which aired on May 7, 2011 (hereinafter referred as the "Program"). Plaintiff's Affidavit (attached as an Exhibit to Plaintiff's motion). Plaintiff entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of South Carolina, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the Program to patrons within their respective establishments (i.e., racetracks, casinos, bars, restaurants, nightclubs, etc.). Plaintiff's Affidavit. On May 7, 2011, private investigator David Carter observed the

exhibition of Program at Defendants' place of business during business hours. See Entry #39-4 Affidavit (attached as an Exhibit to Plaintiff's Motion). In his Affidavit, David Carter sets forth that he entered "Honey Beez," located at 4438 State Road S-10-32, North Charleston, South Carolina 29405, on May 7, 2011, at 9:30 P.M. Id. He describes the bartender, the number of televisions and other distinguishing features of the establishment. Id. He also describes the names and attire of the fight participants in the Program, and he avers that approximately 12 people were present at "Honey Beez" while he was there and that "Honey Beez" has an estimated capacity of 65 people. Id.

In the Amended Complaint, Plaintiff alleges that Defendants, Latashia Washington and Brian Washington, are the owners, principals, alter egos, managers, agents, and/or other representatives of "Honey Beez," and that they "had dominion, control, oversight and management authority over the said establishment." Amended Complaint ¶¶ 7-8 and 10.

### IV. DISCUSSION

Plaintiff asserts that Defendants' actions have violated both 47 U.S.C. § 553 and 47 U.S.C. § 605. These two statutory schemes provide relief for the alternate means of reception—cable and satellite, respectively—of the Program. In its Motion for Default Judgment, Plaintiff submits that it has established liability pursuant to 47 U.S.C. §605 and 47 U.S.C. § 553; and because the two statutory schemes provide relief for the alternate means by which the Program might have been received (satellite or cable), Plaintiff elected to proceed under 47 U.S.C. § 605.

In electing to pursue damages pursuant to 47 U.S.C. § 605, Plaintiff concedes the split in authority as to the applicability of this section to pirated programming involving cable services--as opposed to satellite services--at the delivery point, and it submits that, without the benefit of discovery or an admission by Defendants, it is impossible to conclusively determine whether the Program was broadcast by cable or satellite signal. The court recognizes that 47 U.S.C. § 605 would

be inapplicable if the delivery were by cable; however, given the default, Plaintiff cannot conduct discovery to determine the mode of transmission.[1]

Section 605 provides, in pertinent part, that

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance purport, effect, or meaning thereof [] to [] any person other than the addressee, his agent or attorney[.]

47 U.S.C. §605(a). By way of Carter's Affidavit, in which he avers that he viewed the program at "Honey Beez," Plaintiff has presented evidence sufficient to establish that Defendants "divulged" the Program to its patrons.

The available penalties and remedies for violation of 47 U.S.C. § 605(a) include a private civil action, as follows:

> (B) The court--
>
> > (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
> >
> > (ii) may award damages as described in subparagraph (C); and
> >
> > (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Plaintiff seeks damages, attorneys' fees and costs.

### 1. Statutory Damages under 47 U.S.C. § 605

The statute sets out the following available damages:

> (C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with

---

[1] A higher range of damages is available in 47 U.S.C. §605 than in 47 U.S.C. §553. Nevertheless, this distinction is of no moment in the present case in light of the amount of damages the undersigned recommends.

> > (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> > (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
> (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section. . . .

47 U.S.C. § 605(e)(3)(C).

Plaintiff seeks to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. § 605(e)(3)(C)(i)(I). Because of Defendants' default, actual damages are difficult to prove as Plaintiff has not been able to conduct discovery concerning, among other things, Defendants' profits from the broadcast of the Program. Plaintiff seeks $10,000.00 in statutory damages, which is the maximum available pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and it argues for the maximum recoverable statutory

damages to compensate Plaintiff for its damages and for the deterrent effect it may have in minimizing such future conduct. Courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation. See J&J Sports Prods., Inc. v. JR'z Neighborhood Sports Grille, Inc., 2:09-3141-DCN, 2010 WL 1838432 (D.S.C. April 5, 2010) (noting various methods of calculating statutory damages); Joe Hand Promotions, Inc. v. Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug. 23, 2010) (noting consideration of licensing fee "and the multiple and net amount necessary to ensure a deterrent effect").

In line with the awards recommended and/or awarded by this court for similar violations, see, e.g., Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd., 3:10-199-CMC, 2010 WL 3420189, *2 & n. 2 (D.S.C. Aug. 23, 2010); Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc., 4:10-801-TLW-SVH, 2010 WL 5141768, *2 (D.S.C. Oct. 1, 2010; Joe Hand Promotions, Inc. v. Scott's End Zone, Inc., 759 F.Supp.2d 742, 748 (D.S.C. 2010), the undersigned recommends a statutory damages award of $8,400.00, which is two times the license fee Defendants should have paid to legally broadcast the Program, which amount, when combined with enhanced damages and attorneys' fees, discussed below, is a sufficient deterrent of future conduct.

Plaintiff also seeks enhanced damages of $100,000.00 pursuant to 47 U.S.C. §605(e)(3)(C)(ii)(II). Section 605 allows for enhanced damages in addition to statutory damages when the violation is committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff's president, Joseph M.

Gagliardi, avers, and it is undisputed, that the Program could not have been "mistakenly, innocently or accidentally intercepted." Plaintiff's Aff. (Entry #39-3) ¶ 9. Although more than nominal damages should be awarded to deter future violations, the maximum enhancement as sought by Plaintiff is inappropriate due to the absence of evidence of factors which the courts often look for to justify a larger award. For example, there is no evidence that "Honey Beez" advertised the event. "Honey Beez" charged a cover charge of $15.00, yet with 12 persons, they would not have obtained substantial revenue from broadcasting the Program. See generally Kingvision Pay-Per-View, Ltd. v. Guiterrez, 544 F.Supp.2d 1179, 1185 (D.Colo. 2008) (listing factors that courts consider in awarding enhanced damages). Accordingly, it is recommended that Plaintiff be awarded enhanced damages in the amount of two times the statutory damages, or $16,800.00.

Finally, Plaintiff seeks attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii), which states that the court "shall" award attorney's fees and costs. Plaintiff submits the Affidavits of its counsel, Leonard R. Jordan, Jr. and Thomas P. Riley, in support of its request for fees and costs.

In determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awarded in similar cases. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.

1978); Jackson v. Estelle's Place, LLC, No. 09-1700-2010 WL 3190697, *4 (4th Cir. Aug.12, 2010). A number of the factors may not be applicable in a particular case and, thus, need not be strictly applied. See E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir.1990).

Mr. Jordan, local counsel for Plaintiff, asserts that his services are routinely billed at $200.00 per hour and he has spent approximately 9.35 hours in representing Plaintiff in this matter for total attorney's fees of $1,870.00. Jordan Aff. (Entry 39-6) ¶ 4. Mr. Jordan sets forth in his Affidavit an itemized description of the work he has done on this case. *Id*. The undersigned finds Jordan's rate and the time spent on this file to be reasonable. See, e.g., Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). (Noting that, to determine whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community"). Mr Jordan also avers that Plaintiff has incurred litigation costs of $575.00, including the $350.00 filing fee and $225.00 for service of process fees. Id. at (Entry 39-6) ¶ 4.

Mr. Riley, Plaintiff's counsel located in South Pasedena, California, avers that his billable hourly rate for federal civil litigation practice is $400 per hour. Riley Aff. (Entry 39-7) ¶8. His firm bills administrative assistant time at $75 per hour and paralegal time at $110 per hour. Id. In support of these hourly rates, Riley avers that they "are well within the guidelines of the prevailing market rates within Los Angeles County and the United States," Id. at ¶ 9, and attaches the "Laffey Matrix," which has been adopted by the Northern District of California as a source of attorney's fees compensation. See IO Group, Inc. v. Jordan, 2010 WL 2231793 (N.D.Cal. June 1, 2010); but see Perez v. Cozen & O'Connor Group Long Term Disabilty Coverage, 2007 WL 2142292 (S.D.Cal. March 27, 2007); Fitzgerald v. City of Los Angeles, 2009 WL 960825 (C.D.Cal. April 7, 2009). The relevant market for determining the prevailing rate is ordinarily the

community in which the court where the action is prosecuted sits. Rum Creek, 31 F.3d at 175 (citing National Wildlife Feration v. Hanson, 859 F.2d 313 (4th Cir.1988). However, rates for an attorney outside the relevant community can be considered in certain circumstances. Id. Here, Plaintiff retained Mr. Riley who then retained Mr. Jordan as local counsel to perform the bulk of the work on this file. Under these circumstances, the undersigned finds that the rates for Riley and his staff are reasonable. Riley sets forth an itemized description of the work completed by him, his administrative assistant, and his paralegal for a total of 3.575 hours and $590.63 in fees. Id. at ¶12.

Riley also avers that Plaintiff incurred costs for miscellaneous charges and investigative fees totaling $713.57. Id. at ¶5 and 11.[2]

In light of the foregoing discussion, it is recommended that Plaintiff be awarded attorneys' fees and costs in the amount of $3,749.20.

In sum, on Plaintiff's claim under 47 U.S.C. § 605, it is recommended that Plaintiff by awarded $8,400.00 in statutory damages, $16,800.00 in enhanced damages, and $3,749.20 in attorneys' fees and costs for a total award of $28,949.20.

---

[2]Riley also avers that his firm advanced to local counsel $350 for the filing fee and $100 for service costs. Id. ¶¶ 3-4. However, these costs are already set forth in Jordan's affidavit and are not recoverable twice.

## VI. CONCLUSION

In light of the above discussion, it is recommended that Plaintiff's Motion for Default Judgment (Document #39) be GRANTED. It is further recommended that, on its claim under 47 U.S.C. § 605, Plaintiff be awarded statutory and enhanced damages in the aggregate amount of $25,200.00, along with attorney's fees in the amount of $3,749.20, for a total award of $28,949.20. Defendants should be found jointly and severally responsible for these damages awards.

It is so RECOMMENDED.

Charleston, South Carolina
September 27, 2013

s/Bruce Howe Hendricks
Magistrate Judge
United States District Court

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).